IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WILLIAM HERNANDEZ, | : |
| Petitioner, | : |
| v. | : |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

Civil No. 10-4943 (JBS)
[Crim. No. 06-126 (JBS)]

**OPINION**

APPEARANCES:

William Hernandez, Pro Se
#41168-050
USP McCREARY
P.O. Box 3000
Pine Knot, KY 42635
          Petitioner

Howard J. Wiener, Assistant U.S. Attorney
OFFICE OF THE US ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
      -and-
Steven J. D'Aguanno, Assistant U.S. Attorney
OFFICE OF THE US ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
          Attorneys for Respondent

**SIMANDLE**, Chief District Judge:

**I. INTRODUCTION**

    This matter comes before the Court on Petitioner William

Hernandez's petition to vacate, set aside, or correct sentence,

filed pursuant to 28 U.S.C. § 2255, on the grounds of ineffective

assistance of counsel under the Sixth Amendment of the United

States Constitution.[1] [Docket Item 1.] The motion, files and records of the case conclusively show that Petitioner is not entitled to relief on any of his claims, and therefore his § 2255 petition will be denied as to those claims, for the following reasons.

## II. Background

Petitioner was arrested in connection with a home invasion and robbery in Erial, New Jersey, which culminated in a high-speed chase that led police from New Jersey into Philadelphia, Pennsylvania. A jury convicted Petitioner, along with three co-defendants, of conspiracy to interfere with commerce by threats of violence in violation of the Hobbs Act, 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3), as well as interstate and foreign travel or transportation in aid of racketeering enterprise in violation of the Travel Act, 18 U.S.C. §§ 1952(a)(2), (a)(3)(B), (b) and (2). Petitioner also was convicted of aiding and abetting the brandishing of a firearm in connection with a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii) and (2). See United States v.

_____

[1] In Section IV of Petitioner's motion form ("Grounds for Relief"), he alleges three grounds that entitle him to relief: (1) ineffective assistance of counsel under the Sixth Amendment, (2) ineffective assistance of appellate counsel under the Fifth and Sixth Amendments, and (3) prosecutorial misconduct that resulted in a deprivation of a fair trial under the Due Process Clause of the Fifth Amendment. [Docket Item 1.] However, in Petitioner's memorandum supporting his petition, he only argues claims that sound in ineffective assistance of counsel. In the last paragraph of his reply brief, Petitioner, for the first time, asserts a claim of actual innocence of the § 924(c) charge, a claim he did not raise on direct appeal.

Hernandez, 306 Fed. Appx. 719, 720-21 (3d Cir. 2009) (summarizing the crime, charges and sentences); see also Cr. No. 06-126, Docket Item 125 ("Judgment in a Criminal Case") (enumerating the charges for which Petitioner was found guilty). Petitioner received a prison sentence of 480 months. [Cr. No. 06-126, Docket Item 145.]

Petitioner appealed his conviction and sentence on the grounds that (1) evidence of his cell phone records should not have been admitted, (2) there was insufficient evidence to convict under the Hobbs Act, and (3) the charge under § 924(c) should have been dismissed because the Court did not have jurisdiction over the Hobbs Act and Travel Act counts. The Third Circuit rejected all of these claims and affirmed the sentence and conviction. See Hernandez, 306 Fed. Appx. at 721-22. The U.S. Supreme Court denied certiorari. Hernandez v. United States, 130 S. Ct. 195 (2009).

Petitioner, pro se, timely filed this petition to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Petitioner makes several claims, each of which allegedly supports a finding that his trial attorney, Fortunato N. Perri, Jr., Esq., provided him with ineffective assistance of counsel in violation of the U.S. Constitution. Petitioner asserts counsel failed (1) to provide him with sufficient information to evaluate his plea of not guilty, (2) to adequately investigate Petitioner's case before trial, (3) to interview and call favorable witnesses, (4)

to file pretrial motions to challenge the prosecution's evidence,
(5) to move for a mistrial after jurors observed Petitioner in
shackles in the courtroom, (6) to object and make a record of
juror sleeping during the trial, (7) to challenge the
prosecution's evidence and witnesses, (8) to interview experts
and call expert witnesses to counter cell phone tower evidence,
(9) to object to a Bruton violation, (10) to seek Petitioner's
consent before stipulating to facts during trial, (11) to advise
Petitioner about his right to testify, (12) to object to an
erroneous application of § 924(c), (13) to properly object to the
presentence report calculation errors for sentencing, (14) to
present on appeal the erroneous classification of Petitioner as a
career offender, and (15) to present on appeal "meritorious
issues properly preserved" before and during trial. [Docket Item
1.] Later, Petitioner filed an "Addendum" to his memorandum,
adding a paragraph that he asserts was mistakenly left out of his
final brief. The Addendum asserts that counsel was ineffective
for not seeking a Rule 29 motion for acquittal on the ground that
Petitioner was actually innocent of the § 924(c) claim. [Docket
Item 12.] Finally, in Petitioner's reply brief, he asserts, for
the first time in so many words, actual innocence of the § 924(c)
charge as grounds for relief under 28 U.S.C. § 2255. [Docket Item
70, at 10-11.]

After requesting and receiving several extensions of time to file a response, the government filed opposition, contesting all of Petitioner's claims. [Docket Item 13.]

The Court will assess each claim in turn.

### III. Standard of Review

Under § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. Id.; see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).

Generally, an evidentiary hearing must be held to resolve issues of fact falling outside the record of the case. United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980). However, a hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of

the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. Id. (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Government affidavits filed in opposition to a petition for § 2255 relief are not part of the files and records of the case and are not conclusive against the petitioner. Id.

Furthermore, not every asserted error of law may be raised on a § 2255 motion. See Davis v. United States, 417 U.S. 333, 346 (1974). The appropriate inquiry is whether the claimed error is a "fundamental defect which inherently results in a complete miscarriage of justice" and whether it presents "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. (quoting Hill v. United States, 368 U.S. 424, 429 (1962)).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the United States Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show prejudice under Strickland, Petitioner must demonstrate that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."

Gov't of the V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)
(quoting Strickland, 466 U.S. at 694).

IV. **Discussion**

    A. **Failure to advise about sentence exposure**

       Petitioner alleges that his counsel did not inform him about consecutive prison terms, did not advise him of the "Career Offender" provision under the sentencing guidelines, and did not apprise him of his possible sentence exposure if he were found guilty at trial. [Mem. of Law and Facts Supporting Section 2255 Mot. ("Pet. Mot.") at 3-4.] Respondent replies that the record shows that Petitioner knew about the risks of going to trial and his possible sentence exposure, because Petitioner acknowledged as much on the record in court, and thus Petitioner can show no prejudice, even assuming that his counsel was deficient. [Resp't Opp'n at 11-13.]

       In a proceeding before Judge Rosen, then a U.S. Magistrate Judge, the prosecutor summarized the charges facing Petitioner and noted that a conviction on the § 924(c) charge could result in a sentence of "up to life imprisonment." [Docket Item 14-2 at 73:16-74:15.] Judge Rosen asked Petitioner if he heard and understood the summary, to which Petitioner replied "Yes." [Id. at 74:16-18.] The prosecutor repeated the same information five days later at Petitioner's pretrial detention hearing, including the possible maximum sentence of life in prison, and Petitioner similarly affirmed that he heard and understood the charges and

possible consequences. [Id. at 80:11-81:3.] The same information about the charges and their possible penalties, including the possibility of "life in prison," was repeated in the Petitioner's presence at the arraignment on the superseding indictment. [Id. at 88:17-89:10.] Furthermore, Mr. Perri, Petitioner's counsel, in a declaration states that he advised Petitioner of the possibility of life in prison. [Docket Item 14-1 ¶ 5.]

Based on these exchanges contained in the record, and supported by Mr. Perri's declaration, the Court finds that Petitioner was aware of the risks of going to trial. Because Petitioner knew of the possibility of a life sentence, and received 40 years in prison, he will be unable to show prejudice from counsel's alleged ineffective assistance under Strickland and no evidentiary hearing will be held on this issue.

**B. Failure to advise about pleading guilty**

Petitioner asserts that had counsel provided better information, "there is a reasonable probability that [Petitioner] would have pled guilty, avoided a jury trial, and received a sentence far lesser [sic] than forty (40) years . . . ." [Id. at 4.] Petitioner asserts that his counsel did not advise him of the option to plead guilty and accept responsibility without having to cooperate with the government. [Id.] Petitioner acknowledges in his reply brief that initial plea discussions were conducted with appointed attorney Martin I. Isenberg, not Mr. Perri, whom he subsequently retained. [Pet. R. Br. at 6-7.] He asserts that

he was exposed to up to 98 additional months of imprisonment because of Mr. Perri's lack of advice about plea bargaining. [Id. at 8.]

Respondent asserts that Petitioner did not receive a plea offer, nor would Petitioner have taken one, because Petitioner has never admitted guilt in any form. [Resp't Opp'n at 11-12.] Respondent argues there are "at least two kinds of ineffective assistance claims in the plea bargaining context" - when an attorney fails to communicate a plea offer to his or her client and when an attorney gives advice that is so incorrect and insufficient regarding a plea offer that the defendant's ability to make an intelligent decision is undermined - and neither is available to Petitioner here, because the government extended no plea offer. [Id. at 17 n.10.]

The Third Circuit has recognized that a habeas petitioner states a plausible claim for ineffective assistance of counsel when he asserts that his counsel failed to advise of the possibility of entering an open plea, which would have reduced his sentence. United States v. Booth, 432 F.3d 542, 549 (3d Cir. 2005). In Booth, defendant Booth went to trial after plea negotiations broke down. Id. at 544. Booth was sentenced to 90 months in prison, and his conviction was affirmed on appeal. Id. Booth filed a § 2255 petition, alleging his counsel was ineffective because he was not informed about all possible plea options, including an "open plea," which would not have required

Booth to cooperate with the government. Id. at 543. The district court denied the motion without holding a hearing, but the Third Circuit reversed, concluding that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" and that Booth raised a sufficient allegation that he would have accepted an "open plea" and was entitled to an evidentiary hearing on the merits. Id. at 545, 549. The Third Circuit stated: "we must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct" and the court found that Booth likely would have received a reduction in sentence for accepting responsibility. Id. at 548-49. The Third Circuit ordered the district court to hold an evidentiary hearing on the question. Id. at 550.

The Third Circuit distinguished the Booth holding in United States v. Gonzalez-Rivera, 217 Fed. Appx. 166 (3d Cir. 2007), and in that case affirmed the district court's denial of a § 2255 petition for an evidentiary hearing. The petitioner in Gonzalez-Rivera argued his counsel was ineffective for failing to pursue a plea agreement. Id. at 168. The court distinguished Booth, because the petitioner in Gonzalez-Rivera had maintained his innocence throughout the proceedings, and was unwilling to plead guilty, unlike Booth, who had engaged in plea negotiations. Id. at 170. In addition, the court in Gonzalez-Rivera found that the petitioner's counsel had informed him of the option to plead

guilty without cooperation, unlike Booth's counsel, who did not discuss that option with Booth. Id.

Here, Petitioner alleges that he would have pled guilty had he known about the possibility of receiving a lesser sentence without cooperating with the government. Id. at 4. Mr. Perri's declaration even suggests that, before trial, Petitioner inquired about pleading guilty: "The only time Hernandez ever gave any indication that he was considering a guilty plea was when he told me to see if the prosecution would give him a ten year deal." [Docket Item 14-1 ¶ 5.] Mr. Perri explains that "I did not think he was serious when he said that" and, in Mr. Perri's opinion, Petitioner never "express[ed] any serious interest whatsoever in pleading guilty." [Id.] In fact, Mr. Perri asserts that he "strongly suggested Hernandez to plead guilty because I told [Hernandez] that I did not believe he could win the case." [Id.] The government communicated to Mr. Perri that it was willing to enter plea negotiations and that defendants had the option of a proffer session, according to Mr. Perri's declaration, but Petitioner "refused to entertain any notion of pursuing plea negotiations." [Id. ¶¶ 6-7.] Mr. Perri continues: "the government never rendered a formal plea offer; plea bargaining discussions never got specific because my interactions with my client convinced me that he never seriously contemplated pleading guilty." [Id. ¶ 8.]

Petitioner does not claim that his attorney failed to present an actual plea offer from the government. He also fails to explain his rather singular belief that he could only plead guilty if he cooperated with the government against others. Again, neither the government nor defense counsel ever attached such a condition to plea negotiations. The record is clear that there is no indication that he told his attorney, before or during the trial, that he wished to explore entering a guilty plea. He wanted his attorney to pursue all defenses. Finally, he gives no indication, even now, that obtaining a 3-point reduction in his proposed guideline range for acceptance of responsibility, still leaving him to face the certainty of many years of imprisonment and mandatory consecutive sentences, would have conceivably induced him to enter an open plea to all counts of the indictment. Accordingly, Petitioner fails to demonstrate that he would have entered an open plea, let alone that his attorney unreasonably failed to urge him to enter an open plea under the circumstances.

C. **Failure to challenge cell phone evidence and failure to investigate a line of defense to challenge the cell phone evidence**

Petitioner next asserts that the case against him "hinged on [the government's] cellular telephone evidence," which demonstrated that Petitioner's cell phone traveled roughly the course that the prosecution argued Petitioner and his co-defendants took on the night of the crime. [Pet. Mot at 5-6.]

Petitioner claims this his attorney "allowed the prosecution's
telecommunications evidence . . . to go largely uncontested,"
even though Petitioner "informed counsel that there may have been
an innocent reason why" his phone was in the vicinity of the
crime on that night. [Id. at 5-7.] Petitioner suggests that his
phone could have been carried by a friend or family member, or
someone might have "cloned" his phone and thus it only appeared
that Petitioner's phone was in the area. [Id. at 7.] He faults
his counsel for not calling an expert to explain these
possibilities. [Id. at 7.]

   Respondent argues that Petitioner never explains what
information would have been found, had counsel investigated these
matters. [Resp't Opp'n at 18.] Respondent also argues that the
government argued at trial that there was no possibility that
someone other than Petitioner was using his phone that night
because, during the relevant period of time, the phone made
outgoing calls to Petitioner's girlfriend and relatives. [Id. at
20.] Furthermore, Mr. Perri did attack the testimony of Mark
Gillen, an FBI agent assigned to the Violent Crime Program out of
the Philadelphia Division, who testified for the government about
the cell site information. Mr. Perri forced Special Agent Gillen
to admit that the precise locations of the phone could not be
determined by the cell signal, nor did the signal indicate the
identity of the person using the telephone. [Id. at 21-22.]
Respondent concludes that there is nothing counsel could have

done to further attack the evidence, and thus, Petitioner cannot show prejudice under <u>Strickland</u>. [<u>Id.</u> at 21.]

At trial, Mr. Perri conducted a challenging cross-examination of Special Agent Gillen, and elicited responses helpful to the defense about the inability of the government to pinpoint exactly the location of a cell phone from the tower information, and Mr. Perri was able to suggest the possibility that someone other than Petitioner was using the phone. [Docket Item 43 at 1331:1-1337:7.]

There was no plausible answer to the question of why some other person would have used the Defendant's cell phone to call his girlfriend and family members at the relevant times. Likewise, if his phone had somehow been cloned by the true assailant, Petitioner could easily have pointed to any unfamiliar numbers that would have shown up on the billing statements to demonstrate such use, but he did not do so and has not done so. Also Petitioner has never attempted to suggest what his attorney should have done to explain why his cell phone was linked to the two cell phones found at the scene of the crashed van.

Mr. Perri's efforts reflect a reasonable strategic decision to deal with the highly persuasive cell phone evidence, within the wide range of competent representation contemplated in <u>Strickland</u>. Given the undisputed evidence about the outgoing phone calls made from Petitioner's phone that night, which was suggestive that Petitioner himself used the phone, Mr. Perri was

not required by the Sixth Amendment to consult with an expert about the possibility of cloning. Neither was Mr. Perri required to investigate who may have had Petitioner's phone if Petitioner, even now, does not suggest any plausible alternative with any specificity. Mr. Perri, to whatever extent he could, attempted to defend against the government's testimony and cast doubt on the strength of the prosecution's case. Mr. Perri's counsel was not ineffective in this regard, and the Court need not hold an evidentiary hearing on this claim.

### D. Failure to interview and call favorable witnesses

Petitioner asserts that his girlfriend, Ashley Krause, and his sister, Wanda Moreno, "would have provided materially favorable testimony" and "would have been [] favorable witness[es]." [Pet. Mot. at 7-8.] Petitioner alleges that his counsel did not properly investigate Petitioner's alleged alibi; counsel reported to Petitioner that he "checked into it and found nothing." [Id. at 8.] Petitioner concludes that his counsel "completely failed to prepare for [Petitioner's] trial . . . ." [Id. at 9.]

Respondent replies that Petitioner has not stated what testimony any of these witnesses would have provided and how it would have helped his case. [Resp't Opp'n at 23.] Respondent also cites United States v. Gray, 878 F.2d 702, 713 (3d Cir. 1989) for the proposition that when a petitioner alleges that counsel

failed to investigate or interview witnesses, prejudice must be assessed in relation to the evidence as a whole.

The Court reads <u>pro</u> <u>se</u> Petitioner's brief to suggest that his girlfriend or sister or other witnesses would be able to testify that Petitioner was elsewhere at the time the crime was committed. Mr. Perri's declaration suggests otherwise. He avers that he reviewed statements from potential witnesses, and even conversed with Ms. Krause about the case, and she convinced Mr. Perri that Petitioner was actually guilty. [Docket Item 14-1 ¶¶ 9-10.]

The prosecution's cell phone evidence, showing the location of Petitioner's phone and the outgoing phone calls to Petitioner's acquaintances, as well as the connection of the two recovered cell phones to Petitioner's phone, is strong. The cell phone evidence connected Hernandez to the precise route and times of the journey to New Jersey, the home invasion, and the getaway to Philadelphia. While it is true that the provided no witness who identified Petitioner, specifically, as being at the scene, Petitioner even at this time provides no proffer of the supposedly favorable testimony that his girlfriend Ashley Krause and his sister Wanda Moreno would have given.[2] The Court notes

_____

[2] Petitioner also suggest his attorney should have called Nancy Smith, a 911 caller, who had reported "two Hispanics" running from the scene of the crashed SUV. (Pet. Br. at 9.) In fact, Mr. Perri objected to a co-defendant's attempt to introduce the Nancy Smith 911 call into evidence on grounds that it was confusing and unduly prejudicial. (Tr. 1738-40; App. 507-08.) In that tape, Smith described two men who looked Hispanic running

that Petitioner's allegations are not sufficient for him to succeed on the motion after an evidentiary hearing; he has not articulated any testimony from any named witness that would help his defense, and a petitioner does not meet the <u>Strickland</u> standard with "mere speculation" about what the unlocated witnesses might have said. <u>Gray</u>, 878 F.2d at 712.

It is uncontradicted that Mr. Perri indeed investigated the prospect of calling Moreno and Krause. As to Moreno, he learned that she had been immunized by the government and that she gave information harmful to Petitioner's defense, according to the report of her interview. (Perri Decl. ¶ 10 at App. 56-57.) He also interviewed Krause and never received information from her that would be helpful to Petitioner's defense; in particular, "Krause confirmed that Hernandez had his cellular telephone (as opposed to someone else having it) during the relevant time period." (<u>Id.</u> ¶¶ 10-11 at App. 57.) If either Moreno or Krause had any exculpatory evidence to offer, it does not appear upon this record.

---

down the street in the dark near the crash; the Court agreed this would be prejudicial to Hernandez because there was no basis for how Smith could have accurately observed what she was reporting, and Mr. Perri's objection was sustained. (Tr. 1751-1755; App. 511-12.) Thus, the trial record discloses nothing that would have made Nancy Smith a favorable witness for Hernandez, and her eyewitness testimony that two persons fleeing police were Hispanic would have been somewhat probative against Hernandez. Indeed, calling Nancy Smith may have been disastrous for Hernandez. Petitioner's reference to Nancy Smith as his parole agent (officer?), in Pet. Aff. ¶ 13, and that her testimony would have been favorable, is puzzling and merits no further consideration.

Given the overwhelming strength of the circumstantial evidence against Petitioner and given further the efforts counsel undertook to investigate them as possible alibi witnesses, this is not a case where counsel's efforts were below the standards of effective assistance.

Petitioner's bald assertions and conclusory allegations do not provide sufficient ground to require an evidentiary hearing, where Petitioner has not proffered specifically what their testimony would have been and where counsel in fact investigated them as possible witnesses and rejected the idea for perfectly sound reasons. Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991); see Gray, 878 F.2d at 711 (hearing necessary if counsel failed to conduct any investigation about plausible witnesses).

### E. Failure to raise a double jeopardy defense

Petitioner argues that his counsel was ineffective for failing to recognize or object to simultaneous prosecution under the Hobbs Act and the Travel Act, which Petitioner alleges constitutes double jeopardy, because both convictions were based on proof that Petitioner used interstate highways and cell phone communications. [Pet. Mot. at 9-11.] Respondent replies that the Hobbs Act does not require proof of interstate travel, whereas the Travel Act does, and thus the prosecution in this case does not constitute double jeopardy under Blockburger v. United States, 284 U.S. 299, 304 (1932) (holding that the test to

determine if conduct constitutes two offenses is whether each statutory provision requires proof of a fact that the other does not). [Resp't Opp'n at 25.]

The Court agrees with Respondent that the Hobbs Act does not require proving interstate travel whereas the Travel Act does. Compare 18 U.S.C. § 1951(a) (no interstate travel requirement) with 18 U.S.C. § 1952(a) (requiring proof of "travel[] in interstate or foreign commerce"). The Hobbs Act, furthermore, requires proof on an agreement to violate the Hobbs Act, whereas the Travel Act conspiracy requires proof of an overt act in furtherance of the conspiracy. See Johnson v. United States, No. 10-2984, 2013 WL 1007242, at *4 (D.N.J. Mar. 12, 2013) (concluding no Blockburger violation of charging two counts under the Hobbs Act and the Travel Act). Although the prosecution used Petitioner's interstate travel to satisfy the effect-on-commerce element of the Hobbs Act, that choice does not render the prosecution vulnerable to a double jeopardy defense. Thus, the prosecution properly pursued convictions under both statutes, and counsel was not ineffective for failing to raise a legally baseless double jeopardy objection. An evidentiary hearing need not be held on this issue.

## F. Failure to move for mistrial or object to jurors observing Petitioner in shackles at trial

Petitioner asserts that his trial was prejudiced because members of the jury could observe him constrained in shackles during the trial when the curtain around the defense table fell,

revealing the restraints, or when prospective juror went to sidebar during the jury selection process. [Pet. Mot. at 11-12.] Petitioner cites Illinois v. Allen, 397 U.S. 337, 344 (1970), for the proposition that the sight of defendant in shackles might have a significant effect on the jury's feelings about the defendant. [Id. at 12.] He claims that counsel was ineffective for failing to move for a mistrial or to make a record of the curtain falling. [Id.]

Respondent replies that the orientation of the defense table at trial would have made it impossible for any juror to see the shackles under normal conditions. [Resp't Opp'n at 27-28.] Respondent argues that the allegation of the curtain falling and revealing the shackles is unsupported in the record, and Petitioner has not alleged how long jurors would have been able to see the restraints. [Id. at 26.] Moreover, Respondent argues that Petitioner cannot demonstrate prejudice, because an inadvertent sighting of Petitioner would not have prejudiced the jury within the meaning of Strickland. [Id. at 28.] Respondent asserts that the "overwhelming evidence of guilt" eliminates the possibility that Respondent was prejudiced, even if jurors saw him in shackles. [Id. at 29.]

Petitioner does not allege that his restraints were on view during the whole trial. Petitioner's pleading, even if believed for the sake of argument, suggests that the curtain's falling provided, at most, a limited opportunity for the jury to see his

restraints, and he provides no support for the fact that this circumstance was inherently prejudicial to his trial.

At the trial, the Court and all counsel took special precautions so that the jury would be unaware that the defendants' feet were restrained. All counsel tables (including the prosecution) had drapes over the front and side edges. The four defendants and their attorneys were seated at an L-shaped configuration of tables on the far side of the courtroom from the jury gox. Three defendants (including Hernandez) and their counsel sat at the tables along the far wall, while Mines and his counsel sat at a perpendicular table (the short edge of the "L") facing the front of the courtroom. The defendants, including Hernandez, never left their seats while the jury was present. During jury selection, if a juror were brought to sidebar for questioning, it would be impossible for the juror to see any restraints as he or she passed to the far front corner of the courtroom with the curtains on the tables in place. The Court finds that the precautions assured that no restraints would be seen by jurors.

Hernandez does not identify any time or date when his protective curtain supposedly fell away, and this Court certainly recalls none. There is no indication in the entire trial transcript that there was any drapery malfunction nor that any prosecutor, defense attorney, Deputy Marshal or other court personnel noticed any drapery problem whatsoever.

Illinois does not help Petitioner and does not suggest a bright-line rule that the visibility of shackles constitutes grounds for a mistrial. In that case, the Supreme Court, in dicta, suggested that binding and gagging a defendant to the point of "total physical restraint" was not the preferred method of dealing with a defendant whose outbursts required quieting. Illinois, 397 U.S. at 344. However, the Supreme Court stated that, in some situations, "binding and gagging might . . . be the fairest and most reasonable way to handle a defendant who acts as [the disruptive defendant] did here." Id. Instead, exposure of shackles to a jury requires a mistrial only when the exposure is so inherently prejudicial as to deny the defendant's constitutional right to a fair trial. United States v. Banks, No. 01-5145, 2002 WL 19749, at *5 (E.D. Pa. Jan. 8, 2002) (quoting United States v. Moreno, 933 F.2d 362, 368 (6th Cir. 1991)).

Here, Petitioner suggests at most that the jury had an accidental opportunity to view his leg restraints. No such event occurred. Under the circumstances, even if the shackling was momentarily visible, and given the strong evidence of Petitioner's guilt, a brief view of restraints cannot be so inherently prejudicial as to require a mistrial, or constitute ineffective assistance of counsel for failing to raise the issue before the court. The Court will deny Petitioner's request for an evidentiary hearing on this matter.

**G. Failure to object and make record of jurors sleeping**

Petitioner asserts that "[o]n numerous occasions" jury members slept during trial. [Pet. Mot. at 12.] Petitioner claims he brought this to the attention of his attorney at trial, who responded that "it would interrupt the proceedings and bring negative attention" to Petitioner to object to that conduct. [Id.] Petitioner asserts that his counsel was ineffective for failing to bring this conduct to the attention of the Court. [Id.]

Respondent again argues that Petitioner's claim lacks specificity, as Petitioner does not state how many jurors he witnessed sleeping, nor how long they slept or what portions of the trial they missed. [Resp't Opp'n at 30-31.] In his declaration, Mr. Perri denies that he saw jurors sleeping and asserts that he likely would not have brought that fact to the Court's attention for tactical reasons. [Id. at 30.] Respondent notes that "seeing someone close his/her eyes does not mean he/she was sleeping." [Id. at 31.] Respondent requests the Court deny Petitioner's request for a hearing because Petitioner cannot show prejudice on this issue. [Id. at 30.]

A federal district court, faced with a similar claim by a habeas petitioner alleging that jurors slept during his trial, refused to grant an evidentiary hearing. Dupree v. Roe, No. 02-1160, 2007 WL 4526470, at *11 (E.D. Cal. Dec. 18, 2007), adopted by, 2008 WL 554245, at *1 (E.D. Cal. Feb. 28, 2008). The district court adopted a recommendation from a magistrate judge denying a

request for a hearing because the petitioner "relates nothing of substance about the claim, e.g., some form of identity [of the juror], length of time of alleged sleeping, what was transpiring in court at the time, time when the attorney was told, etc." Id. The court states that "[t]he claim subject to the request must be specifically made before a hearing should be ordered." Id.

The Court here finds that Petitioner has failed to state with particularity facts that, if proven, would entitle him to relief. Alternatively, even assuming Petitioner's allegations are true, Petitioner's own pleading suggests that counsel offered a reasoned explanation for his failure to alert the court to a sleeping juror: he felt that objecting would bring unwanted attention to Petitioner. Cf. Ridling v. Norris, No. 05-300, 2007 WL 592901, at *6 n.6 (E.D. Ark. Feb. 21, 2007) (suggesting that counsel might reasonably decide not to wake a sleeping juror during the prosecutor's presentation). The Court finds Petitioner has failed to proffer specific evidence that any jurors were asleep during the trial in general or during any critical phase thereof. Moreover, the Court declines to find Mr. Perri's alleged conduct ineffective assistance within the meaning of Strickland. Cf. Muniz v. Smith, 647 F.3d 619, 623-24 (6th Cir. 2011) (finding no ineffective assistance of counsel, even when the defense attorney slept through a portion of the trial). The Court declines to hold an evidentiary hearing on this matter.

## H. Failure to challenge the prosecution's evidence and witnesses

Petitioner alleges ineffective assistance of counsel on the ground that counsel did not ask Brian McMorrow, an eyewitness, whether he could identify Petitioner as the driver of the vehicle on the night of the crime. [Pet. Mot. at 13.] Counsel only cross-examined four of 18 prosecution witnesses, and declined to ask questions suggested by Petitioner. [Pet. Mot. at 13.] For instance, Petitioner wanted counsel to elicit testimony about how Petitioner's DNA could have been found on a knit hat removed from the vehicle, and Petitioner faults counsel for "refus[ing]" to ask Mr. Gillen or another expert about cell phone evidence. [Id. at 13-14.] Petitioner concludes that this constitutes ineffective assistance of counsel. [Id. at 14.]

Respondent argues that none of these alleged failures prejudiced Petitioner's case, and addresses each specific charge. [Resp't Opp'n at 32.] First, Respondent contends that counsel "would have been incompetent if he had acceded to [Petitioner's] request to ask a witness, Brian McMorrow, . . . if he could identify any of the perpetrators of the home invasion" because of the risk of an affirmative response. [Id.] Respondent implies that not all witnesses testified against Petitioner at trial - some testified only against his co-defendants - and thus faulting Mr. Perri for cross-examining only four witnesses was misleading. [Id. at 33.] Respondent points out that the government stipulated to the alternative explanation for finding Petitioner's DNA in the vehicle - that he had prior opportunity to come into contact

with the vehicle. [Id.; see also Docket Item 55 at 1893:4-25, Docket Item 56 at 1895:1-23 (explaining, in counsel's closing argument, that the government stipulated to the fact that Petitioner had driven the car before and explaining how DNA could have been found inside the vehicle).] Finally, Respondent argues that cross-examination of Mr. Gillen and Mr. Shute in the manner suggested by Petitioner likely could have hurt his case, because the answers would tend to show that Petitioner actually used his cell phone that night. [Resp't Opp'n at 34.]

The Court agrees that there are valid and competent explanations for each of counsel's decisions at trial. An evidentiary hearing on these matters could not reveal facts that would tend to show ineffective assistance of counsel. Mr. Perri reasonably refused to ask a risky question to a key witness, he stipulated to facts helpful to the defense and reminded the jury about them in his closing and he competently cross-examined a government witness about cell phone evidence. The trial record reflects Mr. Perri's competency within the meaning of Strickland. The Court will not hold an evidentiary hearing on these matters.

**I. Failure to procure expert services and witnesses**

Petitioner alleges ineffective assistance of counsel on the ground that Mr. Perri did not consult with or call expert witnesses to challenge the prosecution's cell phone evidence, which revealed the geographical location of Petitioner's cell phone at specific times. [Pet. Mot. at 15.] Petitioner asserts

that counsel should have called experts to challenge the evidence and testimony about "Global Cell Identifiers and their use to establish geographical coordinations [sic] though cellular phone tower tracking technology." [Id.] Petitioner acknowledges that the decision not to use an expert is generally not grounds for ineffective assistance of counsel, but argues that in this case "no objective strategy could excuse counsel's failure to procure expert services." [Id. at 16.]

Respondent argues that the record shows Petitioner's counsel was so effective at cross-examining the government's case agent, Mr. Gillen, that the government was forced to call another witness, Mr. William Shute, a special agent at the FBI assigned to the Philadelphia Violent Crimes Fugitive Task Force, to testify more about the cell phone technology. [Resp't Opp'n at 36.] Respondent adds that none of the defendants were able to cast doubt on Mr. Shute's testimony and that Petitioner has failed to articulate how, had his counsel consulted an expert, that such knowledge or resulting testimony would have helped his defense. [Id. at 35, 37.] Respondent concludes that "some evidence is too strong to be successfully attacked . . . ." [Id. at 37.]

The Court agrees with Respondent that the record shows Mr. Perri competently cross-examined Mr. Gillen on the cell phone evidence. Petitioner has not suggested how his counsel's performance could have been improved by consulting an expert to

cross-examine Mr. Shute, who testified about cell phone networks and towers work and how the location of cell phones can be determined. [Docket Item 46 at 1457-1479.] Petitioner has not suggested what parts of the technical testimony were subject to impeachment, contradiction or qualification. Given the record of Mr. Perri's cross-examination of Mr. Gillen, which demonstrates his competence in questioning experts on these technical issues, the Court rejects the notion that Petitioner should be entitled to a hearing on his counsel's ineffective assistance on the grounds of failing to challenge the prosecution's cell phone evidence.

### J. Failure to object to a <u>Bruton</u> violation

Petitioner asserts that audio recordings of jailhouse phone conversations between Petitioner's co-defendants, which alluded to a "boy that got the same name" (Hernandez, Petitioner), were used improperly to assert a connection between Petitioner and his co-defendants and to suggest Petitioner's guilt. [Pet. Mot. at 16.] Petitioner argues that the use of a non-testifying co-defendant's statement that "incriminated" Petitioner violated his right to confront witnesses against him, in violation of <u>Bruton v. United States</u>, 391 U.S. 123 (1968). [<u>Id.</u>] Petitioner claims his criminal trial was prejudiced and his counsel should have objected to the <u>Bruton</u> violation. [<u>Id.</u> at 17.]

Respondent counters that the evidence did not implicate Petitioner in the crimes charged and that the prosecution used

28

the prison calls for a limited purpose: to demonstrate that the co-defendants knew each other prior to their arrest. [Resp't Opp'n at 38-40.] Furthermore, co-defendant Brown's reference to a "boy that got the same name" did not mention Petitioner in connection with the commission of any crime. [Id. at 39.] Respondent argues that the recordings were properly admitted for a limited purpose, that the Court issued a proper limiting instruction to the jury, and the prosecution referenced the material only in connection with Petitioner's co-defendants and never in connection with Petitioner himself. [Id. at 39-44.]

The Bruton principle, as articulated by the Supreme Court, is that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the defendant." Richardson v. Marsh, 481 U.S. 200, 207 (1987). At the same time, the Supreme Court recognized that, ordinarily, juries will adhere properly to limiting instructions regarding evidence. Id. To implicate Bruton, a statement must be "clearly inculpatory" or "powerfully incriminating" to the defendant. United States v. Belle, 593 F.2d 487, 495 (3d Cir. 1979) (quoting Bruton, 391 U.S. at 135, and United States ex rel. Nelson v. Follette, 430 F.2d 1055, 1057 (2d Cir. 1970)). "When a codefendant's extrajudicial statement does not directly implicate

the defendant, the Bruton rule does not come into play." _Id._ at
493.

The phone conversations entered into evidence are neither
clearly inculpatory nor powerfully incriminating to Petitioner,
nor do they directly implicate Petitioner in any crime.
Therefore, this is a circumstance in which it may be assumed that
jurors will follow their limiting instructions. _See_ _Richardson_,
481 U.S. at 207 (describing "the almost invariable assumption of
that law that jurors follow their instructions"). Here, the Court
gave a limiting instruction that "the spoken statement of one
defendant may be considered as evidence only against that
speaking defendant. You may not consider one defendant's post-
arrest statement as evidence against any other defendant in this
case." [Docket Item 42 at 1290:3-8.] The tapes were edited for
relevancy and clarity and a further limiting instruction was
given to explain gaps in the tapes. [_Id._ at 1304:18-1307:5.] The
prosecution did not attempt to use the tapes as evidence of
Petitioner's involvement in a criminal scheme, but rather to
rebut the contention of Petitioner's co-defendants that they did
not know each other prior to their arrest.

The Court reviewed the tapes for _Bruton_ purposes prior to
admitting them into evidence. [Docket Item 42 at 1304:7-15.] The
Third Circuit affirmed that the Court "did not err in admitting
the telephone calls because the government used the statements
attributed to Brown, Johnson and Mines . . . only to rebut their

claims that they did not previously know each other and were randomly arrested in Philadelphia that night." Hernandez, 306 Fed. Appx. at 722 (citing Tennessee v. Street, 471 U.S. 409 (1985), for the proposition that an out-of-court statement that a co-conspirator used to impeach the defendant's testimony, rather than to prove the matter asserted, did not violate the Confrontation Clause).

The Court concludes that there was no Bruton violation here, no violation of the Confrontation Clause and no ineffective assistance of counsel for failing to raise these issues. No evidentiary hearing is required on this claim.

### K. Stipulating to facts without Petitioner's knowledge or consent

Petitioner asserts that his counsel made several evidentiary stipulations that "essentially conceded [Petitioner's] guilt" and deprived him of a fair trial. [Pet. Mot. at 17-18.] The stipulated facts are:

> (1) all calls and their authenticity; (2) toll booth tape, time and authenticity; (3) [Petitioner's] bank account information, address phone numbers and that of Wanda Moreno . . . ; (4) substantive cellular phone/tower/subscriber and geographical coordinances [sic] evidence; (5) [Petitioner's] possession of certain evidence critical to prosecution's case as well as phone location and information related to phones associated with [Petitioner]; (6) [Petitioner's] travel date and time to Mexico; and, (7) [Petitioner's] brother's phone communicating with [Petitioner's] phone at particular time and date.

[Id. at 17 (transcript citations omitted); see also Docket Item 40 at 1213:10-1219:3, 1232:17-1233:20 (transcripts of stipulated facts).]

Respondent argues that the stipulations were read in open court, in Petitioner's presence, and if Petitioner "had not consented to any stipulations, at the reading of the very first stipulation, he . . . could have brought this to the attention of the Court." [Resp't Opp'n at 44.] Respondent further argues that Petitioner does not allege that the stipulations were factually incorrect or that there exists any evidence that would call into question any of the stipulated facts, or that the stipulations involved waiver of fundamental constitutional rights. [Id. at 45.] Respondent asserts that the government would have been able to prove all of the facts to which Petitioner's counsel stipulated. [Id.]

The Court disagrees with Petitioner that the stipulated facts "essentially conceded" his guilt and prevented Petitioner from receiving a fair trial. The stipulated facts thus do not implicate fundamental constitutional rights. Rather, the stipulated facts included basic information about Petitioner and his phone and bank accounts, which items were recovered from Petitioner's home at the time of his arrest, and information about cell phone calls - information that the prosecution easily could have admitted into evidence through competent testimony and documentary proof without stipulations. Petitioner does not

allege that any of the facts were incorrect or misleading; he objects to the fact that he was unaware of the stipulations and he did not consent to them. It was not ineffective assistance of counsel for Mr. Perri to stipulate to these uncontroverted facts enumerated by Petitioner without Petitioner's consent, and Petitioner certainly suffered no prejudice, absent an allegation that the stipulated facts were false or the prosecution would not have been able to prove the stipulations through other means. No such allegations have been made, and no evidentiary hearing need be held on this issue.

## L. Failure to advise properly about Petitioner's right to testify

Petitioner argues that counsel recommended Petitioner not testify, because the prosecution would impeach Petitioner's credibility and the testimony Petitioner would give could be elicited from other witnesses. [Pet. Mot. at 18.] Petitioner asserts that counsel "exploited" Petitioner by saying his choice to testify might jeopardize his co-defendants' cases, although Petitioner adds that counsel did not state how taking the stand would hurt his co-defendants. [Pet. Mot. at 19.] Petitioner claims he wanted to testify and would have testified about (1) why a phone generating signals similar to his own might have been in the vicinity of the home, (2) why his DNA would be found in the SUV, and (3) why he went to Mexico. [Id.] Petitioner argues that his testimony would have changed the outcome of the proceedings. [Id. at 20.]

Respondent points to the record to show that Petitioner voluntarily and knowingly waived his right to testify, as the Court made this record with the concurrence of counsel. [Resp't Opp'n at 46-47.]

> THE COURT: All right. Mr. Herndandez? Do you understand, sir, that you have a right to testify in this case, and to offer to the jury the testimony that you would like them to consider about your case?
> DEFENDANT HERNANDEZ: Yes, your Honor.
> THE COURT: And do you also understand you have a right not to testify, that is you have a right to remain silent. And if you remain silent, then I would inform the jury that they cannot consider your silence or use it against you in any way; do you understand that?
> DEFENDANT HERNANDEZ: Yes.
> THE COURT: And have you discussed this with your attorney or whether or not to testify?
> DEFENDANT HERNANDEZ: Yes.
> THE COURT: Have you made a decision?
> DEFENDANT HERNANDEZ: Yes.
> THE COURT: And what is your decision?
> DEFENDANT HERNANDEZ: I waive my right to testify.
> THE COURT: All right. And is it your own personal decision and no one else's?
> DEFENDANT HERNANDEZ: Yes.

[Docket Item 52 at 1767:5-25.] The record thus confirms that Petitioner knew that he had a right to testify and to offer his testimony to the jury and that is was his own personal decision to not testify. He will not be heard now to claim that he lied to the Court about this choice at trial.

Respondent also contests that Petitioner was prejudiced by failing to testify about the enumerated topics. Petitioner did not suggest why a phone, not belonging to him, could have generated similar signals to the phone seized from him at the time of arrest. [Resp't Opp'n at 47.] Petitioner's counsel had

already stipulated that Petitioner had used his brother's SUV on a previous occasion, providing a possible explanation for how his fingerprint could be found on the car and why his DNA might have been found on items in the car. [Id. at 48.] Petitioner did not suggest why he went to Mexico immediately after his co-defendants were apprehended or how his case would be prejudiced if he did not testify on that subject. [Id.] Finally, Respondent adds that Petitioner's case would have been harmed if he had testified and had been impeached with testimony that he was a parolee with multiple felony convictions over many years' time. [Id.]

The Court finds, based on the motion and the record, that Petitioner made an informed choice to remain silent at trial. Moreover, he was not prejudiced by not testifying at trial. The Court reads Petitioner's brief to suggest that he wanted to testify about how a cell phone, not his own, would give off a signal similar to his phone - in other words, to explain Petitioner's theory of cloned phones.[3] See Pet. Mot. at 7, 14, 19 (arguing that a cloned phone could make it appear that the original cell phone user was in the location of the cloned phone signal). Such testimony would not have been admissible because Petitioner could not be qualified as an expert to testify about cloned phones under the Federal Rules of Evidence 702.

---

[3] Petitioner's brief cannot be read to assert that he wanted to testify someone else was carrying his cell phone that night, because the claim refers to "a phone generating similar cellular [signals] as his" phone. [Pet. Mot. at 19.]

Petitioner's testimony would have been limited to matters he had observed or within his personal knowledge, under Rule 602. Next, the Court agrees that Petitioner's past exposure to the SUV was stipulated by the parties, and thus his lack of testimony on the matter did not prejudice his case. Petitioner's explanation for why he traveled to Mexico - yet unarticulated - would not have had a direct bearing on his guilt or innocence, nor would it have rebutted any of the prosecution's evidence that tied him to the crime, including the cell phone call records and signal locations. Finally, the Court agrees that counsel's recommendation not to testify, when Petitioner's credibility could be impeached with his criminal convictions and parole status, was competent advice.

Because counsel's advice was competent, and the motion and the record demonstrate that Petitioner was not prejudiced, the Court declines to hold an evidentiary hearing on this claim.

## M. Failure to object to the application of 18 U.S.C. § 924(c) and the corresponding 10-year sentence

Petitioner alleges that his counsel was deficient for not objecting to the application of 18 U.S.C. § 924(c) to his conduct and the Court's jury instructions on that charge. [Pet. Mot. at 20.] The Court reads this to mean that Petitioner believes that he should not have been convicted under § 924(c). In addition, Petitioner argues counsel was deficient for not objecting to his sentence, which, at 10 years, Petitioner argues is "contrary to law" because, he asserts, § 924(c) carries only a five-year

36

sentence. [Id. at 20.] In Petitioner's "Addendum," he argues that counsel was ineffective for not seeking a Rule 29 motion for acquittal on the basis that he was actually innocent of the § 924(c) charge. [Docket Item 12.] He contends that there is no evidence that he ever used a gun, or aided and abetted the use of a firearm. [Id.] Finally, Petitioner argues in his reply brief, albeit for the first time, that he is entitled to direct relief because he is actually innocent of § 924(c). [Pet. R. Br. at 10.]

Respondent answers that the Court properly applied § 924(c) and that Petitioner cannot demonstrate that the Court handled the jury instructions improperly. [Resp't Opp'n at 49.] The record demonstrating Petitioner's role in the crimes - serving as a lookout and driver for the co-defendants, knowing one of his co-defendants was armed - supports a conviction for aiding and abetting a violent crime under § 924(c). [Id. at 49 n.34.] Furthermore, § 924(c) carried a mandatory minimum sentence of seven years, and a sentence of 10 years was proper. [Id. at 50.] Respondent argues that the jury instructions were correctly defined. [Id.]

Third Circuit case law permits liability under § 924(c) on an aiding and abetting theory. United States v. Price, 76 F.3d 526, 529 (3d Cir. 1996). In Price, the defendant never held a gun during a bank robbery, but gathered the money while a co-defendant held the weapon. Id. The defendant either knew in advance that a gun would be used in the commission of the crime,

37

or he was aware that a gun was being used while he continued to participate in the robbery. Id. at 530. After finding those elements present - knowledge of the gun used in connection with the crime and continuing to participate in the offense - liability under § 924(c) was proper. Id.

Petitioner need not have carried a gun to be liable under § 924(c), as he claims. Liability attaches if Petitioner had knowledge of a defendant brandishing a firearm, the defendant did so in relation to a crime of violation, and Petitioner continued to participate in the offense. Here, the jury heard testimony from Brian McMorrow that he entered the home and saw several men, including at least one holding a gun. [Docket Item 19 at 183:19-22, 186:23-187:13.] From this, the jury could conclude that Petitioner had knowledge of the presence of the gun, and the gun was used in relation to the crimes. Because Petitioner continued to participate in the commission of the crime by, among other things, driving the SUV back to Philadelphia, the record supports a sentence under § 924(c).

Because the gun was brandished, according to Mr. McMorrow's testimony, the statutory minimum sentence is "not less than seven years." § 924(c)(1)(A)(ii). Thus, a sentence of 10 years is not "contrary to law," as Petitioner suggests.

Additionally, the Court has reviewed the jury instructions on aiding and abetting and on § 924(c) (see Docket Item 54 at

1819:10-1821:4, 1838:4-1845:11), and the Court is satisfied that the elements of the statute were explained properly.

Therefore, all of Petitioner's claims relating to § 924(c) fail on the record or as a matter of law. An evidentiary hearing need not be held on these claims.

## N. Failure to object to an improper calculations and classifications related to sentencing

Petitioner identifies three problems with his sentencing: (1) that his Base Offense Level ("BOL") in the presentence report ("PSR") was determined in error, resulting in an improper sentencing range, (2) he was improperly classified as a career offender, and (3) his criminal history category was calculated in error. [Pet. Mot. at 21-23.] Petitioner claims that his counsel was ineffective for failing to properly object to these errors. [Id.]

### i. Base Offense Level sentencing range

Petitioner argues that his Base Offense Level ("BOL") in the presentence report ("PSR") was determined in error. [Id. at 21.] "Instead of using the instant offenses of conviction as required to establish the statutory maximum sentence, the PSR used the statutory maximum related to Count Five (use/carrying firearm under 18 U.S.C. § 924[c]) which is life." [Id.] Petitioner argues that the PSR cannot use firearms offenses in determining the statutory maximum for career offender status, and instead should have used the statutory maximum applicable to the Hobbs Act and

Travel Act charges. [Id. at 21-22.] Petitioner asserts this would have resulted in a BOL of 32 and a sentencing range of 210-262 months, not 360 months to life. [Id. at 22.] Petitioner alleges counsel was ineffective for not objecting to this error. [Id.]

Respondent asserts that the PSR correctly set Petitioner's BOL at 32, and that the correct sentencing range is 30 year to life. [Resp't Opp'n at 52.]

Petitioner was convicted of § 924(c), and therefore U.S. Sentencing Guidelines Manual § 2K2.4(c) applies to him. Section 2K2.4(c) provides: "If the defendant (1) was convicted of violation section 924(c) . . .; and (2) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a career offender under §4B1.1 (Career Offender), the guideline sentence shall be determined under § 4B1.1(c)."

Section 4B1.1(c)(2) provides that:

In the case of multiple counts of conviction in which
at least one of the counts is a conviction other than a
conviction for 18 U.S.C. § 924(c) . . . , the guideline
range shall be the greater of--
(A) the guideline range that results by adding the
mandatory minimum consecutive penalty required by the
18 U.S.C. § 924(c) . . . count(s) to the minimum and
the maximum of the otherwise applicable guideline range
determined for the count(s) of conviction other than
the 18 U.S.C. § 924(c) . . . count(s); and
(B) the guideline range determined using the table in
subsection (c)(3).

Section 4B1.1(c)(3), referenced above in 4B1.1(c)(2)(B), provides the "Career Offender Table for 18 U.S.C. § 924(c) or § 924(a) Offenders."

The greater guideline range, resulting from § 4B1.1(c)(2)(A) and (B), is that produced by subsection (B), which directs that, with no § 3E1.1 reduction, the proper guideline range is 360 months to life. Thus, the Court determined the proper sentencing range, if Petitioner was properly classified as a "career offender," per § 2K2.4(c) and § 4B1.1.

**ii. Career offender classification**

Petitioner asserts that his classification as a career offender under § 4B1.1 was improper because the Court based its determination on two past burglary convictions, and Petitioner asserts he was convicted merely of criminal trespass in one of those cases. [Pet. Mot. at 23.] Petitioner claims that "the PSR apparently broke-up the two convictions and used them separately to classify [Petitioner] as a Career Offender contrary to applicable guidelines provisions. U.S.S.G. § 4A1.2(a)(2)." [Id.]

Respondent replies that Petitioner was, in fact, convicted of burglary twice, not criminal trespass. [Resp't Opp'n at 56.] Respondent attaches to its brief a letter from a U.S. Probation Officer confirming that Petitioner pled guilty to burglary, as well as court documents to support the disposition. [Docket Item 14-1 at 34-37.]

These records were submitted to the Court at sentencing. Petitioner's lawyer originally objected to the use of the second burglary charge for sentencing purposes, but at sentencing, withdrew his objection.

> THE COURT: You filed an objection to Paragraph 121
> where your client had said that his recollection was it
> was only a criminal trespass. Are you satisfied that
> it, indeed, is a burglary of an occupied dwelling or
> occupied structure?
> MR. PERRI: After reviewing the documents, I am, your
> Honor.

[Docket Item 62 at 3:23-4:4.]

The guidelines provide that a defendant is a career offender if the defendant (1) was at least 18 years old at the time of committing the instant offense conviction, (2) the instant conviction is a felony that is a crime of violence or a controlled substance offense, and (3) the defendant has "two prior felony convictions" of a crime of violence or a controlled substance offense. U.S. Sentencing Guidelines Manual § 4B1.1(a). The guidelines define a crime of violence as, among other things, "burglary of a dwelling" or an offense that "has an element the use, attempted use, or threatened use of physical force against the person of another." U.S. Sentencing Guidelines Manual § 4B1.2(a)(1)-(2). The term "two prior felony convictions" means that the instant offense was committed after the conviction of two felony convictions of a crime of violence and the sentences for at least two of the felony convictions are counted separately under § 4A1.1(a), (b), or (c). § 4B1.2(c).

The Court used one burglary conviction and a separate aggravated assault conviction to qualify Petitioner as a career offender. [Id. at 9:1-4.] At sentencing, the Court reasoned that

> [t]he nature of those two predicate offenses,
> especially the aggravated assault in which he shot a

42

companion in the chest at short range, indicate an escalating pattern of criminality that began with juvenile adjudication and escalated beyond that into the burglary and finally into almost killing somebody with his gun. . . . Mr. Hernandez seems to have displayed no insight into his prior crimes and seems to minimize their importance, especially the near fatal shooting of his companion. So for these reasons, the Court declines to either depart or adjust the sentence downward on overstatement of the criminal history.

[Id. at 9:4-21.] The Court did not err in qualifying Petitioner as a career offender.[4]

This finding also dispenses with Petitioner's separate claim that appellate counsel was ineffective for failing to appeal the Court's "Erroneous Classification of [Petitioner] As A Career Offender." [Pet. Mot. at 24.] Having found the career offender classification proper, appellate counsel was not ineffective for failing to appeal that issue. No evidentiary hearing will be held on this issue.

### iii. Criminal history category

Next, Petitioner argues that "[t]he PSR erroneously attributed 3 criminal history points to each conviction for a

_____

[4] On September 4, 2013, Petitioner filed a "motion for leave to file supplemental pleading" on the issue of whether he was properly found to be a career offender. [Docket Item 71.] He contends that second-degree burglary is not a "crime of violence" and therefore he is not a career offender. [Id. Ex. A at 1-2.] His submission also includes updated citations to case law. However, Petitioner still fails to address that he has been convicted of burglary of an occupied dwelling and aggravated assault, and those two convictions qualify him as a career offender. Because Petitioner's supplemental pleading does not alter the Court's analysis, and would not show that Petitioner is not a career offender, his motion to file supplemental pleading is denied.

total of 6 when the total should have been 3 because the two [burglary] convictions are 'related cases' as defined under U.S.S.G. § 4A1.2(a)(2)." [Pet. Mot. at 22.] Petitioner asserts that if his criminal history category had been nine, rather than 12, his sentencing range would have been 168-210 months. [Id. at 23.] Petitioner concedes that the "miscalculation . . . only becomes[s] material if [Petitioner's] classification as Career Offender is removed." [Id. at 23 n.10.]

Respondent contests Petitioner's calculations, but also correctly argues that the point is irrelevant, because once a defendant is classified as a career offender, his criminal history category increases to VI. [Resp't Opp'n at 54.]

Having found that Petitioner's career offender classification was proper, Petitioner's argument on this ground is moot. The Court also notes that Petitioner's two burglary charges were not "related cases" because the two crimes were separated by an intervening arrest.

Because the Court finds that there were no errors in Petitioner's sentencing, Petitioner's counsel was not ineffective for failing to make objections. An evidentiary hearing need not be held on these claims.

**O. Appellate counsel failed to brief and present "meritorious issues"**

Without any explanation, Petitioner alleges that "Appellate Counsel Failed To Brief And Present To The Third Circuit Court Of

44

Appeals Meritorious Issues Properly Preserved During Pre-Trial And Trial Proceedings." [Pet. Mot. at 24.] This allegation is "too vague to warrant further investigation in a court." United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988). See also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). An evidentiary hearing on this claim will be denied.

## V.  Conclusion

The motion, files and records of the case conclusively show that Petitioner is not entitled to relief on his claims, and therefore his § 2255 petition will be denied. The accompanying Order will be entered.

## VI.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.


**September 23, 2013**             **s/ Jerome B. Simandle**
Date                          Jerome B. Simandle
                               Chief U.S. District Judge